NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WEBB FURNITURE CORPORATION,
Respondent.

No. 10311.

United States Court of Appeals
Fourth Circuit.

Argued May 5, 1966.

Decided Sept. 12, 1966.

Lawrence M. Joseph, Atty., National Labor Relations Board (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Provost, Asst. Gen. Counsel, and Nancy M. Sherman, Atty., National Labor Relations Board, on brief), for petitioner.

John K. Pickens, Alexandria, Va. (Pickens & Stevens, Alexandria, Va., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Chief Judge:

The National Labor Relations Board has petitioned for enforcement of an order finding the employer guilty of the unfair labor practice of refusal to bargain, and requiring it to bargain in good faith with the union.[1] We grant enforcement.

After the union's certification, the parties participated in bargaining sessions over an extended period of time. Tentative agreement was reached upon

---

1. District 50, United Mine Workers of America.

a number of issues, but they were unable to resolve their differences on others. At a meeting held in December 1963, it apparently was mutually agreed that an impasse had been reached. Thereafter, no further bargaining sessions were held, and none were requested until May 1964.

The employer refused the May 1964 request of the union for a meeting, and this refusal was followed by the filing of a charge of refusal to bargain. This charge was dismissed by the General Counsel, presumptively upon the theory that the parties had bargained in good faith and nothing had occurred to indicate a break in the impasse.

Thereafter, the union wrote to the employer modifying its demands on some of the disputed issues, particularly with respect to the annual bonus, about which the parties had been in wide disagreement. The union reported that it was then prepared to accept the employer's eligibility requirements, so that two years' employment was requisite for the maximum bonus instead of the one year the union had theretofore demanded. The union also reported that it was prepared to reduce its demand for the multiple to be used in computing the maximum bonus from eighty to sixty, the multiple being the figure applied to the hourly rate.

The union also stated that it was prepared to accept the provision for three holidays without pay when not worked, but with eight hours work credit for computation of weekly overtime and with a premium payment of half pay if worked. This, the Board found to be a concession from an earlier union demand of six holidays and double time for holiday work, though the employer contends that the union had made substantially the same concession at a bargaining session in October 1963.

The union in its letter of July 1964 did not indicate any concession from its earlier demand for a checkoff, which was the remaining substantial issue over which the parties had been at loggerheads.

Upon receipt of the union's letter of July 1964, the employer summarily rejected the request for a meeting by reference to its rejection of the earlier request in May.

The Board found that the concessions in the July letter were substantial ones, relieving the impasse and reviving the employer's duty to meet and bargain with the union's representatives. Its ruling is consistent with the established principle,[2] if, in fact, the union's concession can be said to have been substantial.

We cannot say that the union's concession was trivial or picayune. Whether or not its July position in respect to holidays had been wholly or partially foreshadowed by statements made in a bargaining session held in the preceding October, its July holiday demand was approaching the minimum and the employer's position. Its undoubted concession in respect to the bonus payments fully met the employer's position on eligibility. The union was still demanding a higher multiple than the employer had offered, but its concession here was a reduction in the annual dollar amount demanded by

2. In Jeffery-DeWitt Insulator Co. v. NLRB, 4 Cir., 91 F.2d 134, 139–140, 112 A.L.R. 948 (Parker, J.), there was bargaining followed by a strike resulting in a closing of the plant. The plant was later reopened despite the continuance of the strike. United States Conciliators intervened. The Court said that the striking employees, after nearly a month of idleness were doubtless willing to make concessions to compromise the matters in difference and thus the controversy had undergone considerable change requiring the employer to return to the bargaining table. In NLRB v. United States Cold Storage Corp., 5 Cir., 203 F.2d 924, 928, a strike was held sufficient change to break an impasse. The Court said "a strike of nearly three months' duration may well have created conditions in which the parties would be more willing to make concessions to compromise the matters in difference * * *."

the union for bonus payments in excess of $8,000.

The money part of the agreement had been a particular stumbling block in the negotiations. The parties had agreed upon the direct wage rates, but their differences over the fringes, at least with respect to the bonus payments, had prevented complete agreement.

■ The employer, emphasizing the facts that it had committed no earlier unfair labor practice and that it bargained through to the end of the certification year, points to the history of the negotiations and contends that the union's concession was not substantial. Its position seems to be that the Board could not reasonably have supposed that it would accept the union's modified proposal, particularly in the light of the union's failure to suggest any concession in its demand for a checkoff.

This, we think, is beside the point. When the union tendered some concessions, the employer might reasonably be required to recognize that negotiating sessions might produce other or more extended concessions. That is the purpose of collective bargaining. By July, it was readily apparent to the union that the impasse could be broken only by concessions on its part, but it would be extraordinary to suppose that it would do so then in terms of an ultimatum, or that its initial modification of its demands would go to the ultimate limits of its possible agreement.

■ Since the union's concessions in July 1964 cannot be said to have been trivial or meaningless, we think it was for the Board to say whether or not they were of such substantiality as to relieve the impasse and to open a ray of hope with a real potentiality for agreement if explored in good faith in bargaining sessions.

We accept the Board's finding that the union's concessions of July 1964 were substantial and the Board's order will be enforced.

Enforcement granted.